No. 24,014.

## George W. Scott, *Appellee*, v. Paul Steinberger and George Steinberger, *Appellants*.

### SYLLABUS BY THE COURT.

Lease of Gas Land—*Lease Construed—How Lessor's Share of Gas Obtained Should Be Determined.* In an action to recover the lessor's share of gas obtained from his land under the following provision of the lease, namely:

"Party of the second part shall deliver to the credit of party of the first part free of cost in the pipe lines to which he may connect his wells one-eighth of all oil produced and saved on said premises, and shall pay the market price for same in cash if party of the first part shall so desire; and shall pay to party of the first part one-eighth of all gas produced and marketed."

It is held that the lessor was entitled to receive his share as measured into a pipe line which connected with the wells at the price or value of gas at that place and not the price or value that was obtained for it at some distant place on the pipe line to which it was transported and sold.

Appeal from Montgomery district court; Joseph W. Holdren, judge. Opinion filed March 10, 1923. Reversed.

*S. H. Piper, T. S. Salathiel,* and *Warren. B. Grant,* all of Independence, for the appellant.

*Claud J. Bryant,* of Independence, for the appellee.

The opinion of the court was delivered by

Johnston, C. J.: George W. Scott brought this action against Paul Steinberger and George Steinberger to recover a balance alleged to be due for gas obtained by them from plaintiff's land which they held under a lease. Judgment in favor of plaintiff was awarded, and defendants appeal.

The decision of the case turns upon a construction of the following paragraph of the lease:

"Party of the second part shall deliver to the credit of party of the first part free of cost in the pipe lines to which he may connect his wells one-eighth of all oil produced and saved on said premises, and shall pay the market price for same in cash if party of the first part shall so desire; and shall pay to party of the first part one-eighth of all gas produced and marketed."

When the lease was made no pipe lines had been laid near to the leased premises. After the execution of the lease wells were drilled on the leased premises, from which gas was produced in paying quantities. Later the defendants built a pipe line from the field to

Crow Hill and Neodesha, at a cost of $61,680. The gas was transported through the pipe lines to these points and sold for fifteen cents per thousand cubic feet. Rental value of the pipe line built by the defendants was found to be $15,000 per year, and the reasonable transportation charge for transporting gas from the field to these points was found to be seven cents per thousand cubic feet. The expense of operating the pipe lines amounted to $10,800 per year, and the taxes upon the pipe lines amounted to $5,100 per year. In accordance with a provision of the lease the lessor was to have gas free at the wells for domestic use at his residence. Some gas was used for drilling wells and some sold to domestic consumers on farms adjacent to the field. There is no dispute as to the quantity of gas taken from the wells nor as to the share of the gas produced to which plaintiff was entitled, but the dispute arises whether the plaintiff was entitled to the value of the gas at the wells or the price at which it was sold at the end of the pipe line. Eight cents per thousand cubic feet was found to be the reasonable value on the premises where the gas was produced and seven cents a proper charge for transporting it to the places at which it was marketed. The court determined that the plaintiff was entitled to fifteen cents per thousand cubic feet, the amount received for the gas at the places to which it was transported and marketed.

The terms of the lease are somewhat ambiguous as to the point where the gas was to be measured and its price fixed. There was no pipe line in the vicinity when the contract was made. Evidently the parties contemplated that if oil or gas in paying quantities was found some pipe line company would build into the field and transport it to places of consumption. It will be observed that the provision respecting oil was that the lessees should deliver one-eighth of the oil produced into the pipe lines to which the wells might be connected and pay the market price in kind or in cash as the lessor should desire. In the same connection it was provided that the lessee should pay one-eighth of the gas produced and marketed. We think the parties contemplated, and the provision should be construed, that gas, if produced should be measured and the price determined at the place where the wells were connected with pipe lines, and not at some distant market that might be found at the end of a pipe line remote from the field and where the cost of transportation might equal or exceed the value of the gas produced. If the pipe line had been built by defendants to Kansas City or

Chicago, and the gas transported and marketed there at four or five times its value at the place of production, would it be contended that the price received at either of these distant markets should be the measure of defendant's liability? The lessor's share was one-eighth of the gas produced and sold. Some of it was to be used by him for domestic purposes and possibly some for production purposes. That used by the lessor for domestic purposes was not to be charged to him as a part of his share, and hence it was provided that he should have one-eighth of all that was produced and marketed. The term "marketed" was used in contradistinction to the entire production, some of which was used for domestic and local purposes. The lessor was entitled to one-eighth of all that was placed in the pipe lines for transportation purposes. Owing to its nature his share could not be set apart in kind and delivered to him. It could only be measured by a meter as it passed through a pipe which connected with the wells. When the gas was pumped into the pipe line and measured the shares of the parties were determined. As in the case of the division of oil, the point of measurement and delivery was in the pipe line to which the wells were connected. It was immaterial whether the pipe line into which it was pumped was owned by a pipe-line company transporting gas from many fields or by some one who had no interest in the lease or by the lessees themselves. The place of measurement and for fixing the lessor's share was at the connection with the pipe line. If there was a market price at the point of delivery that would control, but if there was no market price there, then the lessor would be entitled to the reasonable value thereof, to be ascertained upon competent evidence. In an action where the product of gas wells had been appropriated without the consent of one having an interest in the land from which the gas was taken, and an accounting was had, it was held that the measure of damages was the fair and reasonable value of the gas at the time and place at which it was taken. (*Johnson v. Gas Co.*, 90 Kan. 565, 135 Pac. 589.)

Of course, the rights of the parties here are to be determined by the provisions of the lease, and we think the reasonable interpretation of the lease is that the lessor's share of the gas was to be ascertained and the price determined at the pipe line with which the wells were connected. The case of *Barton et al. v. Laclede Oil & Mining Co.*, 27 Okla. 416, cited by plaintiff, is not a convincing authority. However, in that case the contract was that the lessor

should receive a certain share of the gas obtained on the lease "when sold off the premises." The stipulation was literally interpreted to mean that the lessee was to pay the proceeds of the gas at the place of sale when sold at any place away from the premises where it was produced. Here the court found the reasonable value of the gas at the field was eight cents per thousand cubic feet. The plaintiff is entitled to one-eighth of the gas introduced in the pipes without having it diminished by the leakage in transportation through the pipes. That has not been definitely determined and may be found by the court or agreed upon by the parties.

The judgment, however, must be reversed, and the cause remanded for further proceedings in accordance with this opinion.