KATSCHOR et al. v. EASON OIL CO. et al.

No. 25653.     Nov. 10, 1936.

Rehearing Denied Jan. 9, 1937.

Rittenhouse, Webster & Rittenhouse, McGuire & McGuire, and John Barry, for plaintiffs in error.

Simons, McKnight, Simons, Mitchell & McKnight, for defendant in error Eason Oil Company.

GIBSON, J. This action was commenced in the district court of Logan county by plaintiffs in error against the defendant in error, Eason Oil Company, and one D. G. Hughes. Hughes is not a party to this appeal and his interest, if any, is not questioned here. The action involves the rights and interests of the parties under a certain oil and gas lease covering lands in said county and the oil, casinghead gas, and gasoline produced and recovered pursuant thereto.

The plaintiffs in error Henry G. Katschor and Carl Katschor will be referred to herein as the landowners or the lessors; the other plaintiffs in error, R. L. Bosworth, P. A. Currier, W. C. Currier, and F. A. Rittenhouse, as Bosworth and associates; and the defendant in error, Eason Oil Company, as the oil company.

The landowners, or their grantors, executed the oil and gas lease in question to Frank Frantz and W. C. Currier, who thereafter entered into a written contract with the oil company, whereby the oil company was assigned half interest in the lease and given complete charge and management of the operation of the premises thereunder with an arrangement whereby each half interest should bear one-half the expenses incurred in the operation. The interest of Frantz and Currier is now owned by Bosworth and associates.

Pursuant to the foregoing agreement the oil company completed a well producing both oil and casinghead gas. A plant for the manufacture of casinghead gasoline was thereafter erected upon the premises by the oil company; whereupon Bosworth and associates entered into a written agreement with the oil company whereby they sold to the oil company all their interest in the casinghead gas to be produced under the lease, from which casinghead gas the oil company was to manufacture gasoline and pay to the sellers each month therefor a price per thousand cubic feet to be fixed by multiplying the average price per gallon of gasoline received during the month by a certain percentage of the gasoline content of the casinghead gas as ascertained by periodic field compression tests to be made by the oil company.

The undisputed facts are that the well produces approximately 50 barrels of oil and 4,500,000 cubic feet of casinghead gas daily. The oil and gas are allowed to flow together into a separator tank, whence the oil, after separating from the gas by means of gravity, is allowed to flow into the line leading to the flow tanks and the gas moves into the gasoline plant by means of suction engines. The well is not equipped with tubing such as is apparently customary in such cases to facilitate the flow of oil, but the oil in the form of spray is carried with the gas from the mouth of the casing through the flow line into the separator tank as aforesaid.

As their first cause of action the landowners and Bosworth and associates charge that the oil company has fraudulently manipulated and operated the gasoline plant so as to by-pass through the separator tank approximately 53,000 barrels of oil for which it has failed to account to the plaintiffs. It is charged that the by-passing of such oil was accomplished by maintaining a low back pressure on the well and at the same time pulling the oil and gas through the separator tank into the plant by means of suction created by Clark engines without allowing proper time for separation of the oil and gas in the tank.

It is further charged as part of the first cause of action that the oil company has neglected and refused to properly account for and pay to plaintiffs the market price of the oil produced, in that said oil, being above 40 gravity, drew a premium of two cents for each degree over 40 gravity, and that the oil company has fraudulently appropriated to its own use the difference in the price accounted for and the price which should have been accounted for, amounting to approximately $29,627.20.

It is next alleged that the field tests as made by the oil company did not reflect the

actual or approximate gasoline content of the casinghead gas. In this connection it is asserted that the gasoline content was far in excess of the amount disclosed by said tests as was shown by charcoal tests thereof, and that the oil company should be required to pay plaintiffs for the casinghead gas at a rate based upon charcoal tests instead of field tests, notwithstanding the provisions of the contract between Bosworth and associates and the oil company to the contrary. This claim the plaintiffs attempt to substantiate upon the basis of alleged fraud on the part of the oil company in its failure to disclose the actual gasoline content of the gas. Here it is alleged that when the tests were taken the well and the plant were allowed to operate normally, permitting proper separation of the oil and gas, but upon completion of each test the back pressure on the well was immediately decreased and the suction created by the Clark engines increased, all of which operated to pull oil through the separator into the plant. By reason of this alleged fraud the plaintiffs say the oil company should account for the price of casinghead gas on the basis of charcoal tests, which are alleged to be more accurate, instead of the field tests, notwithstanding the facts that said field tests were made under proper conditions and formed the basis of price computation under the contract. The alleged value of the gas so unaccounted for here is $9,412.49.

Continuing the first cause of action, it is alleged that the oil company has taken and appropriated sundry equipment belonging to the lease and has failed to account to Bosworth and associates therefor, and that, upon accounting, the value thereof will amount to the sum of $16,000.

It is further alleged that the oil company has overcharged Bosworth and associates for expense of operation of the lease approximately $629.72.

There are further allegations that the oil company has failed to account to the landowners for residue gas sold off the premises, and that it has also failed to account to Bosworth and associates for certain gas sold.

Plaintiffs assert they are entitled to an accounting and entitled to a lien on the leasehold for the amount found due.

As a second cause of action, plaintiffs allege that the aforementioned well has been damaged to the extent of $30,000 by reason of the wrongful and fraudulent operation thereof by the oil company as hereinabove set out, and they ask that in the accounting plaintiffs be credited with their proportionate part of such damage.

The third cause of action seeks an injunction restraining the oil company from operating the well at a back pressure of less than 60 pounds.

At the close of plaintiffs' evidence the oil company interposed demurrers challenging the sufficiency of the evidence introduced on behalf of the landowners and that introduced on behalf of Bosworth and associates.

The alleged errors assigned consist of the overruling of the motion for new trial; the rejection of certain evidence offered by plaintiffs; sustaining demurrer to the evidence of the landowners; sustaining demurrer to the evidence of Bosworth and associates, and rendering judgment against plaintiffs.

Propositions numbered 1, 2, and 3 in plaintiffs' brief are devoted to a discussion of their right to maintain this action jointly against the oil company. The petition was attacked at the trial on the ground of misjoinder, and the ruling of the court was against the oil company, but it has not appealed, and no assignment presents this question for review. We therefore pass the argument contained in the foregoing propositions without discussion.

The assignments bring here for review only the court's orders on the demurrers and its action in rejecting certain testimony.

We will consider first the alleged error of the trial court in sustaining the demurrers to the evidence of the plaintiffs as to the item of so-called by-passed oil.

This being an equitable action, the trial court, on demurrer to plaintiffs' evidence, was required to weigh the testimony and enter judgment as on motion for judgment (Connolly v. Gaffaney, 159 Okla. 60, 14 P. (2d) 391); and the judgment so rendered will not be disturbed here unless the same is against the clear weight of the evidence. Id.

There is no evidence that crude oil in any appreciable quantity was drawn through the separator tank into the gasoline plant. The testimony of the witnesses Stephens, Parker, and Downs indicates that the Clark engines could have pulled negligible quantities of crude through the tank, but it also clearly appears from the testimony of these witnesses that had crude oil in quantities

sufficient to demand the court's consideration been carried through into the plant, such oil would have been ruinous to the Clark engines. There was a showing that the gasoline plant turned out far more gasoline than either the field tests or charcoal tests indicated the content to be, but this fact is not of sufficient probative value to warrant the conclusion that crude was taken into the plant. It is shown that neither of the tests mentioned will ordinarily indicate as much gasoline content in the gas as is actually present. It is also shown that the more volatile elements flowing from the well with the gas were drawn into the plant by the Clark engines and, further, if this had not been done, these elements could have escaped, to some extent, into the flow tanks, where the same would have been lost. This latter substance, not actually being crude oil, and not coming from the well in the form of gasoline, constituted a constituent part of the casinghead gas and its use in the manufacture of gasoline here was proper. The judgment of the trial court so far as this item is concerned is not against the clear weight of the evidence.

The next item is the alleged discrepancy in the market price of oil as accounted for by defendant. It is said that the oil, being of more than 40 gravity, commanded a higher market price than the regular market so quoted from time to time and upon the basis of which plaintiffs were paid. The regular market price is shown by the evidence of the witness Hivick, and there is evidence that the crude in question was of higher gravity than that upon which the price was testified to by Hivick, but there is no evidence concerning the market price of the high gravity oil. As to that item, the judgment of the trial court is not against the clear weight of the evidence.

The next item affects only Bosworth and associates and arises under their contract with defendant relative to the sale of their portion of the casinghead gas to defendant. They seek payment for the gas based upon charcoal tests instead of the field tests, notwithstanding the contract provided for field tests as a basis upon which to compute the price. It is admitted the field tests were made at a time when the plant and the well were being operated in the manner suitable to plaintiffs, but it is shown by the testimony of the witness Prestidge that at all other times the plant was so operated as to increase the gasoline content of the gas far in excess of that shown by the tests.

The weight of the evidence shows that fact. Although the contract authorized the plaintiffs to demand charcoal tests instead of field tests, they made no such demand until near the time this action was commenced. In the face of this evidence the plaintiffs were not precluded from recovery by reason of their failure to demand the charcoal tests. Had the plant been operated at all times in a reasonably normal manner, the plaintiffs should be bound by the tests as made, but if they had been aware of the conditions, they would have probably demanded the charcoal tests at an earlier date.

By reason of the method in which the plant and well were operated, the defendant has violated the provision of the contract relating to the method to be employed in arriving at the price to be paid Bosworth and associates for the casinghead gas, and by reason thereof Bosworth and associates, after learning the real facts, should have been accorded the privilege of exercising their option to demand payment calculated upon the basis of the charcoal tests as made throughout the period of production.

The items consisting of alleged overcharge to Bosworth and associates for certain equipment bought for the lease, and the misappropriation of other, is not established by the evidence.

The next item applies only to the landowners. Their rights in this action arise wholly from the oil and gas lease. The material provisions of the lease relative to royalties are as follows:

" '3. The lessee shall deliver to the credit of the lessor, as royalty, free of cost, in the pipe lines to which lessee may connect its wells the equal one-eighth part of all oil produced and saved from the leased premises or at the lessee's option may pay to the lessor for such one-eighth royalty the market price for oil of like grade and gravity prevailing on the day such oil is run into the pipe line or into storage tanks.

" '4. The lessee shall pay lessor, as royalty, one-eighth of the proceeds from the sale of the gas, as such, for gas from wells where gas only is found and where not sold shall pay 50 dollars ($50) per annum as royalty from each such well and while such royalty is so paid such well shall be held to be a producing well under paragraph numbered two hereof. The lessor to have gas free of charge from any gas well on the leased premises for stoves and inside lights in the principal dwelling house on said land by making his own connections with the well, the use of said gas to be at the lessor's

sole risk and expense. The lessee shall pay to lessor for gas produced from any oil well and used by the lessee for the manufacture of gasoline or any other product, as royalty, one-eighth of the market value of such gas. If said gas is sold by the lessee, then as royalty one-eighth of the proceeds of the sale thereof.' "

The landowners argue that under these provisions they are entitled to payment for one-eighth the gas used in the manufacture of gasoline and one-eighth of the residue gas. They say further, however, that all they are seeking in reference to the gas is payment for the value thereof at the mouth of the well, which value, they say, must of necessity be determined by taking into consideration the plant recovery and the residue gas and deducting from the value of such products the cost of operation and the depletion of the plant.

Evidence was offered to so establish the value of the casinghead gas, but the trial court rejected the same. The oil company had made regular monthly payments to the landowners for such gas, the payment being one-eighth of the value of the gas as determined by the value of the gasoline content of the gas as that content was disclosed by the field tests heretofore mentioned. The landowners, with knowledge of the method so employed, accepted payment for their portion of the casinghead gas. The trial court held them bound by such acceptance and that the payments were in full for the casinghead gas, including the residue gas as a constituent element thereof.

The field tests, however, did not disclose the true gasoline content of the casinghead gas, but showed a content far below that actually present. If the landowners under the terms of the lease contract were entitled to payment on the basis of the actual value of the gas at the mouth of the well, it cannot be said that they have assented to a lesser value by unwittingly accepting payment not founded upon that value expressed in their written contract. They were entitled to one-eighth of the market value if the casinghead gas was used by defendant in the manufacture of casinghead gasoline. The gas was used by defendant for that purpose and, since it is agreed that no market for the gas existed, the provisions of the lease with reference to the method of calculating price failed unless it may be said that "market value" is to be interpreted as meaning "actual value."

The courts and text writers very generally use the terms "value" and "market value" as interchangeable. and either as synonymous with "actual value." See 38 C. J. 1266, section 19; Words & Phrases, vol. 3, Second Series, 304.

The provisions of the lease, therefore, do not fail for want of a market for the casinghead gas, but under those provisions the landowners were entitled to payment therefor at the rate of one-eighth of the actual value thereof.

That value the landowners sought to prove by the only available means, namely, by showing the sale price of the gasoline and the residue gas and deducting from the sum thereof the cost of manufacture of the gas after production, plus depletion of the plant and cost of marketing the gasoline and residue gas. The trial court erred in rejecting this offer of proof.

Bosworth and associates succeeded in showing that they had not received payment for their portion of the residue gas sold by defendants. The judgment of the trial court in this respect is against the clear weight of the evidence. Defendant says this item is not within the issues, but an examination of paragraph numbered 9 of the petition will refute this contention.

As to the item of damages for injuries to the well, caused by alleged improper operation thereof, the plaintiffs established by the testimony of Parker and Downs that the well from the standpoint of the lease owners and the landowners was improperly operated in that no tubing was maintained in the well for the purpose of facilitating the oil flow, and that the well was actually injured by the method in which it and the plant were operated. Plaintiffs then sought to prove by the witness Wallack that the well was damaged, and the extent of the damage. The trial court erred in rejecting this testimony.

By reason of the foregoing circumstances, the judgment of the trial court must be reversed.

The judgment is therefore reversed and the cause remanded, with directions to grant plaintiffs a new trial.

At the new trial the defendant, if it should desire, should be permitted to withdraw its answer and re-present the motions and demurrer filed by it at the outset of the case.

McNEILL, C. J., OSBORN, V. C. J., and RILEY, BUSBY, WELCH, and CORN, JJ., concur. BAYLESS, J., absent. PHELPS, J., not participating.