# CIMARRON UTILITIES CO. v. SAFRANKO et al.

No. 28849. April 9, 1940.

*101 P. 2d 258.*

Hughes & Dickson, of Guymon, and Adkins, Pipkin, Madden & Keffer, of Amarillo, Tex., for plaintiff in error.

Rizley & Dale, of Guymon, and Paul Pugh, of Oklahoma City, for defendants in error.

HURST, J. This action was brought by the plaintiffs, S. D. Safranko and

Mary J. Safranko, to recover the reasonable market value of royalties to which they claim to be entitled under an oil and gas lease covering certain lands in Texas county. The trial court overruled defendant's demurrer to the evidence and request for an instructed verdict, and from judgment on an adverse verdict of the jury, defendant appeals. Defendant argues numerous assignments of error, which involve four contentions: (1) That the evidence conclusively established that there was no market price for gas in the field where plaintiffs' land was located, and that the royalty tendered to plaintiffs was the market value of plaintiffs' gas at the mouth of the well; (2) that the verdict of the jury was contrary to the instructions; (3) that the trial court erred in his instructions given to the jury, and in refusing to give instructions requested by defendant; and (4) that improper argument was permitted. We will dispose of these contentions in order.

1. Plaintiffs leased their land to defendant on February 25, 1930, and about a year thereafter defendant completed a gas well thereon. At that time defendant apparently owned a gas distributing system serving Guymon, and purchased its gas from the only gas producing well in that vicinity, paying for such gas 8 cents per 1,000 cubic feet. The lease from plaintiffs to defendant provided for royalty on gas produced from plaintiffs' land of "one-eighth, at the market price for gas so used, for the gas from each well where gas only is found, while the same is being used off the premises." Defendant under this provision paid plaintiffs 8 cents per 1,000 cubic feet for gas used in supplying Guymon, and other towns and cities in Texas and Beaver counties to which it had extended its distributing system. In 1934, after additional gas wells had been drilled and the supply available to defendant had been augmented thereby, it decreased the price paid for royalty gas to 5 cents per 1,000 cubic feet. At that time the only market for gas was the city of Guymon, and the other towns served by defendant, and the prevailing royalty price was 5 cents per 1,000 cubic feet. Plaintiffs upon investigation satisfied themselves that such was the prevailing price, and accepted the change. Defendant continued to pay this price until the latter part of 1936, at which time it negotiated a contract for the sale of gas in large quantities to a trunk pipe line extending from Texas to Detroit, Mich. This contract was not introduced in evidence, but the testimony of defendant's witnesses established that the price defendant received for gas sold thereunder was 3½ cents per 1,000 cubic feet. This gas was delivered through the line of defendant which served certain communities in Texas and Beaver counties, and thereafter 77 per cent. of the gas transported through the line went to the pipe line and 23 per cent. to the towns served by defendant. Defendant had, previous to the making of this contract, disposed of its distributing system serving Guymon, and of one of its wells to which that system was connected. Upon making the pipe line contract, it tendered to plaintiffs royalty checks for amounts determined by computing 77 per cent. of gas taken at 2½ cents per 1,000 cubic feet, being the pipe line delivery at 3½ cents less 1 cent per 1,000 cubic feet carrying or transportation charge, and by computing the remaining 23 per cent. at 5 cents per 1,000 cubic feet. Plaintiffs refused to accept payment on this basis, contending that they were entitled to 5 cents per 1,000 cubic feet for all royalty gas taken by defendant.

The evidence produced by plaintiffs tended to prove an established market price of 5 cents per 1,000 cubic feet for royalty gas. Defendant conceded that price as applied to gas furnished municipalities, but denied its application to gas delivered to the pipe line, and proved that it was purchasing gas from another well in the vicinity for 2½ cents per 1,000 cubic feet. No other demand for gas in that vicinity, except the comparatively small amount necessary to serve the citizens of Guymon, is shown to exist. Defendant argues that under the circumstances there is no market price for gas at the mouth of the wells in that vicinity, and that therefore the market value of such gas must be ascertained, and that the method pursued by it correctly and

conclusively fixes such value. In support of this assertion defendant cites Sartor v. United Gas Public Service Co., 84 Fed. 2d 436, and Cumberland Pipe Line Co. v. Commonwealth (Ky.) 15 S. W. 2d 280. The rule for ascertaining market value laid down in those cases, when no prevailing market price is shown to exist, substantially accords with that announced by this court in Katschor v. Eason Oil Co., 178 Okla. 634, 63 P. 2d 977, which holds that market value is synonymous with actual value, and may be proved by showing the selling price less the expense of marketing the commodity. But this method is not necessarily exclusive. As said in Sartor v. United Gas Public Service Co., supra, fixed and rigid rules do not obtain, but every factor throwing any light upon the question should be considered. It may be proved by the opinion of competent persons having knowledge of the facts, whether experts or not. Arkansas Natural Gas Co. v. Sartor, 78 Fed. 2d 924; Jones on Evidence, Civil Cases, sec. 387. While defendant complains that much of plaintiffs' evidence was improperly admitted, we think that such evidence was competent. It tended to prove that the value of 5 cents per 1,000 cubic feet paid for gas sold to the municipalities served by this field was not based on the selling price of the gas, less cost of transportation, but was purely arbitrary, and the fact that such price was paid in nearby localities, even though under conditions which were not identical, was some evidence of value. It showed the price at which the commodity was currently sold. 38 C. J. 1261; Wall v. United Gas Public Service Co. (La.) 152 So. 561.

While defendant assumes that the market price for gas delivered to the distributing system serving Guymon, which is 15 cents at the point of delivery at the city limits, is based upon a value of the gas at the well of 5 cents per 1,000 cubic feet, and a carrying charge of 10 cents per 1,000, it also showed that such gas was only transported a distance of four or five miles, while defendant, for transporting its gas approximately 33 miles, makes what it contends is a reasonable charge of 1 cent per 1,000 cubic feet, and another gas producer, testifying for defendant as to gas produced some distance from plaintiffs' well and carried to a different market, testified that his company paid 5 cents per 1,000 to the landowner for royalty gas, and delivered it several miles away for the selling price of 6 cents per 1,000. Another witness for defendant testified that he knew of no well having market facilities except the one owned by the Guymon Gas Company (the well selling gas to defendant for 2½ cents per 1,000) from which royalty gas was purchased for less than 5 cents per 1,000 cubic feet. From all the evidence, it is apparent that the price of 5 cents per 1,000 cubic feet is an agreed, assumed, or arbitrary figure, and is not in all cases the real value of the gas at the well. Therefore, when defendant contends that there is no market price for the royalty gas, and that its market or actual value must be ascertained from the evidence, it must include in such determination the 23 per cent. of its gas delivered to the pipe line. This 23 per cent. was sold to consumers at as high as 60 cents per 1,000 cubic feet. While the actual cost of distribution of this 23 per cent. was not shown, the jury had a right to consider all these facts in determining the market value of the gas. We think, when the evidence is viewed as a whole, that the trial court did not err in refusing to instruct a verdict for defendant and in submitting the case to the jury, and that the verdict of the jury, based upon a value of 5 cents per 1,000 cubic feet, was supported by competent evidence.

2. Defendant next contends that the trial court erred in approving the verdict, for the reason that it was rendered in disregard of the instructions. This contention is based upon instruction No. 8 given by the trial court. Instructions Nos. 7 and 8 were requested by defendant. By No. 7 the jury were instructed that a market price at the well had not been shown, and that they must determine the reasonable market value of the gas at the well by taking the reasonable market value thereof at the point of mar-

keting and deducting therefrom the reasonable cost of transporting it to market. By instruction No. 8 they were told that their verdict should be for defendant unless they found that the sale of gas from plaintiffs' well was at a price less than the ordinary market price thereof, and that the pipe line contract of defendant was the result of fraud or collusion or gross negligence of defendant in negotiating it. By other instructions, the jury were told that the evidence of the price defendant was to receive for gas sold to the pipe line was to be considered with the other evidence in determining the reasonable market value of plaintiff's gas, and that if they found that defendant had not offered to plaintiffs the fair market value of their gas, then their verdict should be for plaintiffs for a sum not to exceed the amount prayed for.

It will be seen that instruction No. 7 was in a measure erroneous in that it restricted the jury in determining the reasonable value of the plaintiffs' gas solely to the sale price less cost of transportation, and instruction No. 8 was erroneous and to some extent in conflict with the other instructions given in that it in effect assumed that there was an ordinary market price for the gas, and assumed evidence from which fraud or collusion or gross negligence of defendant in making the pipe line contract might be inferred, when in fact there was no evidence thereof, and no allegation in the pleadings raising such issues. These instructions were much more favorable to defendant than it was entitled to. They were doubtless considered by the jury along with the other instructions given, which correctly advised them of the issues to be determined and what might be considered in arriving at such determination. Taking the two instructions alone, defendant's contention might be to some extent justified, but when the instructions are considered as a whole, as we are required to do, it is without merit. Dalton v. Bilbo, 126 Okla. 139, 258 P. 274, Farmers Union Co-Operative Gin Co. v. Fairbanks, Morse & Co., 181 Okla. 336, 73 P. 2d 1148.

3. What we have said above disposes of the third contention of defendant as to the error of the trial court. We have examined the instructions, and find no error therein which deprived defendant of any substantial right, or which justifies reversal.

4. Defendant's fourth contention is that the trial court permitted improper and inflammatory argument to be made to the jury by plaintiffs' attorneys. The record does not contain the argument complained of, nor does it show any objection thereto by attorneys for defendant. Therefore it will not be considered on appeal. Levy v. Tharrington, 178 Okla. 276, 62 P. 2d 641.

Affirmed.

BAYLESS, C. J., and OSBORN, DAVISON, and DANNER, JJ., concur.