Hulete A. JOHNSON and Delphialene Johnson, Plaintiffs in Error,

v.

J. E. JERNIGAN and Max V. Morgan, a partnership doing business under the firm name of Jernigan & Morgan Oil Company, J. E. Jernigan and Max V. Morgan and others, a co-partnership doing business under the firm name of Jernigan & Morgan Transmission Company, Cities Service Gas Company, a corporation, and Sunray D–X Oil Company, a corporation, and Jernigan & Morgan Transmission Company, a corporation, Defendants in Error.

No. 42225.

Supreme Court of Oklahoma.

Sept. 29, 1970.

As Corrected Oct. 12, 1970.

Erwin & Erwin, Chandler, for plaintiffs in error.

Shirk, Withington, Work & Robinson, by W. R. Withington, Oklahoma City, for defendants in error.

HODGES, Justice.

Plaintiffs, lessors, filed suit for recovery of monies from defendants, lessees, alleging defendants wrongfully withheld transportation costs from their ⅛th interest of the gross proceeds from the production of natural gas under an oil and gas lease. Plaintiffs allege that they were not paid the full one eighth royalty owners share of the gross proceeds as provided in the lease.

Defendants filed an answer alleging compliance with the terms of the lease and the full payment of the royalty owners ⅛th, less transportation charges of ¢.02 per MCF for gas transported ten miles by a pipe line which defendants operated. Defendants further alleged that there was no market for the gas at the wellhead and that it was their duty as lessees to find a market for the gas instead of having to shut in the well.

The case was submitted to the trial court on stipulation and the pleadings. The trial court found that the cost of transportation was a legitimate charge and entered judgment for the defendants.

The lease provided for a royalty payment as follows: "To pay lessor for gas from each well for gas only as found, the equal one eight (⅛) of the gross proceeds at the prevailing market rate for all gas sold off the premises." Plaintiffs contend that under this royalty clause they are entitled to a payment equal to ⅛th of the sale proceeds without any deductions for expenses

of marketing and transporting the gas, even though the sale was made at a place ten miles away from the lease property.

■ The lease calls for a percentage of the gross proceeds at the prevailing market rate. Market rate means the rate at which the gas is commonly sold in the vicinity of the well. It is the market rate at the wellhead or in the field that determines the sale price, and not the market rate at the purchaser's location which may be some distance away from the lease premises. Katschor v. Eason Oil Co., 178 Okl. 634, 63 P.2d 977; Cimarron Utilities Co. v. Safranko, 187 Okl. 86, 101 P.2d 258. Market rate implies the existence of a free and open market of supply and demand where there are willing sellers and buyers. But in the present case, no evidence was introduced showing such a market or market rate. It appears the parties submitted the case to the trial court upon the basis that there was no market rate at the wellhead or in the field. Our determination will therefore be based upon this factor.

In the case of Katschor v. Eason, supra, the court was confronted with a similar situation where there was no market for the casinghead gas that was used by the lessee to manufacture gasoline. The lease called for the lessor to receive ⅛th of the market value of all casinghead gas used by the lessee for the manufacture of gasoline or any other product as royalty. The court held that if there was no established market for the gas then the lessor was entitled to ⅛th of the *actual* value of the casinghead gas. The court said that the only way to prove the actual value of this gas was by showing the sale price of the gasoline after it was manufactured and deduct from that amount the expenses of manufacturing and marketing the gasoline.

A case more similar in point is Cimarron Utilities Co. v. Safranko, supra. In the Katschor case, casinghead gas was used to manufacture a product which in its natural state had neither market or actual value. However, in the Cimarron case, as in the present case, dry gas was produced and sold in its natural state from gas wells that had been drilled on plaintiff's lease. The lease provided for royalty of "one-eighth, at the market price for gas so used, for the gas from each well where gas only is found, while the same is being used off the premises." The court, without making a distinction between the two cases, enlarged upon the rule in the Katschor case and announced a more flexible principle. The court recognized and approved of the method used in determining value in the Katschor case, but said that method was not necessarily exclusive. The court said that if there was no established market price at the well, then every factor properly bearing on the market value, or actual value, may be considered in determining the amount due. The court then allowed the lessor to prove market or actual value by other evidence, and did not restrict the proof to the sale price of the gas less the expenses of manufacturing and marketing as set out in the Katschor case.

■ In the present case, the only evidence of market or actual value was the sale price of the gas less the pipe line costs at a distance of some ten miles. As we have seen, this method of determining value, in absence of a prevailing market rate, was allowed in the Katschor case and approved in the Cimarron case.

While the approach and language may be different, the majority of other jurisdictions and authorities are in general agreement with this view. In Summers, Oil and Gas, Vol. 3A, Section 589, at pp. 115–116, the author states:

"The lack of a market price for dry gas at the well or in the field is ordinarily due to the fact the field is not served by the pipe lines of a gas purchaser. If it becomes necessary for the lessee to build a pipe line from the field to a point where the gas can be sold, or to transport the gas through other lines to such point, then the market price of the royalty gas is the price paid at the place of sale, less the additional cost of transporting to that market."

In Hemler v. Union Producing Co., D.C.La., 40 F.Supp. 824, the court construed a lease calling for a royalty payment of "⅛th of the value of such gas calculated at the rate of market price." The court said:

"On the other hand, if there were no sales of sufficient quantities and prices, that a reasonable man could say that a market existed at the well in the field, then the lessor was entitled to be compensated for his gas upon some basis that would give him the fair average value of the gas at the well in the field. It has been uniformly held in the latter circumstances that the usual price paid at the nearest point where a market existed, less the additional cost of taking the gas or other product to that market, is the criterion upon which the lessee or purchaser is bound to settle. This ruling is nothing but common sense and simple justice."

In Ashland Oil and Refining Co. v. Staats, Inc., D.C.Kan., 271 F.Supp. 571, the court held:

"Duty of gas lessee to market gas did not require it to devote its 153-mile pipeline system to gather and transport gas from lessors' property to purchaser's pipeline and lessee was not required to pay royalty on that portion of payments under gas purchase contract stated to be charges for gathering and transporting gas to purchaser's pipeline."

See also: Kretni Development Co. v. Consolidated Oil Corp., 9th CCA, 74 F.2d 497; Clear Creek Oil & Gas Co. v. Bushmaier, 165 Ark. 303, 264 S.W. 830; Scott v. Steinberger, 113 Kan. 67, 213 P. 646; Harding v. Cameron, D.C.Okl., 220 F.Supp. 466; 73 A.L.R. Anno., Oil & Gas Lease—Compensation, pp. 1056–1087.

Plaintiffs argue, however, that the above rule and cases are distinguishable for the reason that the royalty clause in the present case entitles the lessor to the "gross proceeds." They contend that under this provision a lessee assumes all financial burdens in marketing and transporting the gas regardless of the distance involved.

The lessee is obligated to develop the commodity he has found so that it will bring the highest possible market value. Harding v. Cameron, supra. But in performing this function he is not required to provide pipe line facilities beyond the lease premises. It is apparent from the lease provisions that the parties assumed that if and when gas was found and produced from the lease property that a prevailing market rate would exist at the wellhead or in the field upon which a royalty payment could be determined. They did not contemplate the lack of a market rate which would require the lessee to transport the gas to a purchaser at a location some distance away from the lease property.

Under the lease the lessor is only entitled to a certain percentage of the gross proceeds of the prevailing market rate. As the prevailing market rate is determined at the wellhead or in the field so must the term "gross proceeds" be interpreted. "Gross proceeds" has reference to the value of the gas on the lease property without deducting any of the expenses involved in developing and marketing the dry gas to this point of delivery. When the lessee has made the gas available for market then his sole financial obligation ceases, and any further expenses beyond the lease property must be borne proportionately by the lessor and lessee.

The cases cited by the plaintiffs in support of their position are not factually applicable to the present case. In the cited case of Barton v. Laclede Oil & Mining Company, 27 Okl. 416, 112 P. 965, the royalty clause provided: "It is further agreed that, if gas is obtained and utilized, the consideration in full of the party of the first part shall be one-tenth portion of each gas well drilled on the premises herein described when utilized and sold off the premises, payable monthly so long as the gas is to be so utilized." After gas was found on the lease property, the lessee, independently and without the knowledge or consent of the lessor, entered into a gas purchase contract with a third party who was to receive the gas and pay "one-half portion of the

proceeds of collection arising from the use and sale of gas each month." The court said this would result in the lessors obtaining only five per cent of the proceeds instead of the ten per cent as provided in the lease. They refused to bind the lessor with the contract and held it was incumbent upon the lessee to sell and pay the lessors one-tenth of the proceeds. In this case, as opposed to the present case, it appears the lessee's contract with the purchaser was not an outright sale of the gas, but rather an attempt on the part of the lessee to make the purchaser its agent or partner. It was an effort by the lessee to base the royalty payment upon the terms of the gas purchase contract, without the knowledge or consent of lessor, instead of the royalty clause as provided in the lease. Also, a distinguishing factor is the royalty clause. In the Barton case the royalty payment was based upon a ⅒th portion of every gas well. In the present case the royalty payment is based upon a prevailing market rate. The court in the Barton case did not have under consideration whether there was a prevailing market rate at the wellhead.

Plaintiffs also rely on the case of Clark v. Slick Oil Co., 88 Okl. 55, 211 P. 496. There the lease required the lessee "to deliver to the credit of the first party (lessor), his heirs or assigns, free of cost, in the pipe line to which the party of the second part (lessee) may connect the well or wells, the equal one-eighth part of all oil produced and saved from the leased premises." Under this provision the court said the expenses of storage or providing storage tanks to let "cut oil" settle or be treated so as to make it marketable and acceptable to the pipe line are expenses of the lessee and not chargeable to the lessor. While the distinction in this case may lie in difference between oil in the Clark case and dry gas in the present case, a more apparent distinction is found in the charges or expenses sought to be proportioned between the lessor and lessee. In the Clark case preparation and care of the oil before delivery to the purchaser was the issue. In the present case we are not concerned with

costs of care and preparation of the gas before delivery, but transportation costs away from the leased property.

Under the facts presented and based on the cases and authorities cited herein, the judgment of the trial court is affirmed.

DAVISON, WILLIAMS, BLACKBIRD, LAVENDER and McINERNEY, JJ., concur.

JACKSON, J., concurs in results.