TXO PRODUCTION CORP., a Delaware corporation; and Delhi Gas Pipeline Corporation, a Delaware corporation, Appellees/Appellants/Counter–Appellees,

v.

STATE of Oklahoma, ex rel., COMMISSIONERS OF the LAND OFFICE; Clifton H. Scott, Auditor and Inspector; Sandy Garrett, Superintendent of Public Instruction; Gary Sherrer, President of the State Board of Agriculture; Jack Mildren, Lieutenant Governor of the State of Oklahoma; David Walters, Governor of the State of Oklahoma; and Carol J. Ford, Acting Secretary of the Commissioners of the Land Office, Appellants/Appellees/Counter–Appellants.

Nos. 78205, 78961.

Supreme Court of Oklahoma.

Nov. 29, 1994.

As Amended on Limited Grant Rehearing, with Rehearing being otherwise Denied Oct. 5, 1995.

Thomas J. Enis, Barbara G. Bowersox, David L. Kearney, Fellers, Snider, Blankenship, Bailey & Tippens, Oklahoma City, for appellees/appellants/counter-appellee.

James T. Dupré, Perry E. Kaufman, Oklahoma City, for appellants/appellees/counter-appellants.

Ralph E. Seals, Jr., McKnight & Gasaway, Enid, for amicus curiae, Ward Petroleum Corp.

SIMMS, Justice:

Defendants, Commissioners of the Land Office and the individual members in their official capacity (Commissioners), appeal the order of the trial court granting summary judgment to plaintiffs, TXO Production Corp. and Delhi Gas Pipeline Corporation[1] (TXO), on TXO's declaratory action regarding post-production costs under an oil and gas lease. The trial court held TXO properly withheld post-production costs from its royalty payments to Commissioners, and Commissioners appealed (Case No. 78,205). Later, the trial court awarded litigation costs to TXO but denied TXO's request for attorneys fees. TXO appealed the denial of attorney fees, and Commissioners cross-appealed the award of litigation costs (Case No. 78,961). The appeals were consolidated.

The Court of Appeals affirmed the trial court's summary judgment for TXO on the royalty payment action, reversed the denial of attorney fees and the award of costs on the second appeal, and remanded for further proceedings. Certiorari was granted to consider the effect of our recent pronouncement, *Wood v. TXO Production Corp.*, 854 P.2d 880 (Okla.1992), on the merits of Case No. 78,205 regarding the royalty payments. We address only those issues presented by certiorari.

Because we find the post-production costs for compression, dehydration and gathering were not chargeable to Commissioners, the opinion of the Court of Appeals is vacated, the judgment of the district court is reversed, and the cause remanded. Furthermore, because TXO does not prevail against Commissioners in this matter on remand, TXO was not entitled to costs and attorneys fees, and the order of the district court in Case No. 78,961 is affirmed in part and reversed in part. The facts presented pursuant to motions for summary judgment follow.

Commissioners, empowered by statute to manage certain public lands of the state, entered into an oil and gas lease with another entity not a party to this suit. TXO subsequently acquired the lease which contains the following royalty provision:

"2. The lessee [TXO] hereby agrees to deliver or cause to be delivered to the Commissioners of the Land Office of the State of Oklahoma, or their successors, without cost into pipelines, a royalty of one-eighth (1/8) part of the oil or gas produced from the leased premises and a one-eighth (1/8) part of all casinghead or drip gas or gasoline or other hydrocarbon substances produced from any well or wells on said premises, *or in lieu thereof, pay to lessor the market value thereof, as the Commissioners may elect.*" (Emphasis added).

Pursuant to this provision, Commissioners elected to receive royalty under the market value alternative. When TXO made royalty payments to Commissioners based on the market value of the products extracted from the wells, it deducted a portion of the royalty to cover Commissioners' share of post-production costs. These post-production costs were for compression, dehydration and gathering. Commissioners disputed the propriety of post-production costs being deducted from royalty and billed TXO for the amount withheld under the subject lease and other similar leases held by TXO. TXO remitted the disputed amount "under protest", and Commissioners responded by commencing an administrative action to have the leases canceled.

TXO withdrew its protest and instituted this action for injunctive and declaratory relief requesting the trial court declare Commissioners were acting beyond their constitutional and statutory powers by instituting proceedings before Commissioners to cancel the lease and enjoin them from proceeding further in such manner. TXO further requested the trial court to declare that the above-quoted lease provision authorizes TXO to deduct post-production expenses from the gross proceeds of the wells covered by the

---

1. Delhi Gas Pipeline Corporation is a nominal party in that by contract TXO Production Corp. has assumed all of Delhi's obligations herein. Hence, we refer to both parties as TXO.

lease before determination of royalties due to Commissioners. The trial court found in favor of TXO on both requests.

Commissioners first assert the "market value" alternative of the lease provision, like the "in kind" alternative, is subject to the phrase "without cost into pipelines." A careful reading of the provision indicates that Commissioners are entitled to a one-eighth royalty and that they may choose from two alternatives of payment of that royalty. The first alternative grants Commissioners one-eighth of the oil, gas or other hydrocarbon substances produced from the well. Such part of production is to be given to Commissioners without charging any costs of delivering the production into the pipeline. Clearly, "without cost into pipelines" qualifies what is meant by the in-kind alternative.

On the other hand, Commissioners may choose, in lieu of actual production, the market value in cash of the first alternative. This is seen in the fact that the clause states that the lessee will "pay to lessor the market value thereof." The term "thereof" refers to the one-eighth royalty of actual production. Since the in kind royalty is qualified by the "without cost in to pipelines" clause, the market value royalty should likewise contain such qualification. In other words, when Commissioners elect to receive cash instead of actual production, they should receive the market value of the in-kind royalty which is one-eighths royalty of production without cost into pipelines. Thus, TXO may not deduct any costs for the royalty payment which results from processes necessary to get the product into pipelines. This is further supported by and seen in this Court's approach to the implied covenant to market owed by TXO as explained in *Wood, supra.*

*Wood* involved a federal certified question as to the interpretation of a royalty provision in a lease between TXO and Mr. and Mrs. Wood who had brought an action against TXO to recover compression charges withheld by TXO when it made royalty payments to the Woods. The royalty provision obligated TXO to pay the Woods royalties of "3/16 at the market price at the well for the gas sold." However, due to low pressure, TXO had to install compressors on the lease prem-

ises in order to deliver the gas into the purchasers' pipelines. When royalties were paid to the Woods for production from the wells, TXO deducted the Woods' proportionate share of the compression costs.

After discussing the different approaches to the issue of post-production costs, we noted that in Oklahoma the lessor is required to bear its proportionate share of *transportation* costs when the point of sale occurs off the leased premises, quoting *Johnson v. Jernigan,* 475 P.2d 396 (Okla.1970) which holds:

" 'When the lessee *has made the gas available for market* then his sole financial obligation ceases, and *any further expenses beyond the lease property must be borne proportionately* by the lessor and the lessee." *Wood,* 854 P.2d at 881 (Emphasis added).

Because the sale of the production occurred on the lease site, at the mouth of the well, there were no transportation costs. We further refuted the lessee's argument that compression was analogous to transporting, and held:

"We have not yet held that the lessor is required to bear any costs of transportation where the point of sale is on the leased premises. In our view, *the gas is 'sold' when it enters the purchaser's line.* Here that line is on the leased premises and there is no 'transportation' cost. The defendant further argues that without compression there will be no sale and thus no royalty at all for the lessor. This argument is not persuasive. *There are many steps in the production or post-production processes that, if not performed, would result in no sale. The lessee is in a position to provide specifically in its leases that lessors will be required to share in compression costs."* 854 P.2d at 881 (Emphasis added).

From this, we concluded that where there is no agreement between the lessor and lessee to share compression costs, we would not require the lessor to bear a portion of those costs. Our reasoning for so holding lay in the fact that:

"[i]n Oklahoma we have equated the gas purchase contract price with the market

value.... One of the risks borne by the lessee in exploring for gas is that the gas will be low pressure. *In our view, the implied duty to market means a duty to get the product to the place of sale in marketable form.* Here the compressors and the connections to the gas purchasers' pipelines are on the leased premises. There is no sale at a distant market and no necessity of transporting the product to the place of sale as there was in *Johnson v. Jernigan, supra.* 854 P.2d at 882 (Emphasis added) (Citations omitted).

The crux of our holding in *Wood* is found in the concluding paragraphs which state:

"We choose to follow the holdings of the Kansas and Arkansas courts. *We interpret the lessee's duty to market to include the cost of preparing the gas for market.* The lessor, who generally owns the minerals, grants an oil and gas lease, retaining a smaller interest, in exchange for the risk-bearing working interest receiving the larger share of proceeds for developing the minerals and bearing the costs thereof. *Part of the mineral owner's decision whether to lease or to become a working interest owner is based upon the costs involved.* We consider also that working interest owners who share costs under an operating agreement have input into the cost-bearing decisions. The royalty owners have no such input after they have leased. In effect, royalty owners would be sharing the burdens of working interest ownership without the attendant rights. If a lessee wants royalty owners to share in compression costs, that can be spelled-out in the oil and gas lease. Then, a royalty owner can make an informed economic decision whether to enter into the oil and gas lease or whether to participate as a working interest owner. *We find that in Oklahoma the lessee's duty to market involves obtaining a marketable product.*" 854 P.2d at 882–83 (Emphasis added).

It is this language which controls the case before us. The post-production costs deducted by TXO were for compression, dehydration and gathering. Clearly, under *Wood*, Commissioners were not chargeable with a portion of the costs of compression because such costs are borne by the lessee under its duty to obtain a marketable product. The question then remains whether TXO may charge a proportionate share of the costs of dehydration and gathering to Commissioners. If the processes of dehydration and gathering are necessary to prepare the product for market, then the costs of these processes may not be deducted under the royalty provision of the subject lease.

TXO concedes in its Answer to Petition for Writ of Certiorari that the opinion of the Court of Appeals, and thus TXO's position, in the case at bar is inconsistent with this Court's opinion in *Wood*. In addition, throughout its brief in chief, TXO states that these post-production charges were the result of TXO's efforts to make the gas "marketable." Under these concessions alone we could hold that the processes were not chargeable to Commissioners because those processes were necessary for TXO to obtain a "marketable product." *Id.* Yet, we deem it instructive to discuss dehydration and gathering separately to determine whether such costs are chargeable to Commissioners.

According to TXO's brief in chief, dehydration "involves removal of moisture from gas before it enter's the purchaser's pipeline." Such a process is necessary in order to make the product marketable and involve costs incident to delivering the product into pipelines. As such, costs of dehydration are not chargeable against Commissioners under *Wood*.

According to the *Manual of Oil and Gas Terms*, "gathering" is a "term which 'refers to the process of collecting gas at the point of production (the wellhead) and moving it to a collection point for further movement through a pipeline's principal transmission system. It should be pointed out, however, that the flow of the gas "is continuous from the well head to the ultimate consumer." '" 8 H. Williams & C. Meyers, *Oil and Gas Law* p. 462 (1994) (quoting *Northern Natural Gas Co. v. Federal Energy Regulatory Comm'n*, 929 F.2d 1261, 1265 (8th Cir.1991)). By this definition, the gathering process occurs prior to the product being placed into the purchaser's pipeline. As such, gathering

is not a deductible expense under the teaching of *Wood.*

Indeed, our discussion of a Louisiana case in *Wood* sheds some light on this point. In *Wood* we considered and specifically rejected the Texas and Louisiana approaches to allowing deductions for post-production costs because those jurisdictions view the lessee's duty to market differently than we view it in Oklahoma. One of the Louisiana cases mentioned in *Wood, Merritt v. Southwestern Elec. Power Co.,* 499 So.2d 210 (La.Ct.App. 1986), involved the lessee charging costs of extracting, *gathering* and delivering gas into the pipeline. We rejected the Louisiana court's holding that such gathering costs were chargeable to the lessor because that court's determination of market value included the subtraction of "costs of taking gas from the wellhead to the point of sale," the pipeline. *Wood,* 854 P.2d at 882. Because the cost of gathering is an expense generated by the lessee's efforts to make the product marketable, it may not be deducted from royalties.[2]

Consequently, under our pronouncement in *Wood* the costs for compression, dehydration and gathering are not chargeable to Commissioners because such processes are necessary to make the product marketable under the implied covenant to market. Therefore, the judgment of the district court must be reversed.

In addition, because the judgment on the royalty payment charges is reversed, TXO cannot be considered the prevailing party. Thus, that portion of the trial court order granting litigation costs to TXO is reversed. Otherwise, the order is affirmed.

For the above and foregoing reasons, the judgment of the district court in Case No. 78,205 is REVERSED, the order of the district court in Case No. 78,961 is AFFIRMED IN PART AND REVERSED IN PART, and both cases are REMANDED for further proceedings consistent with this opinion.

LAVENDER, V.C.J., and HARGRAVE, ALMA WILSON, KAUGER, and SUMMERS, JJ., concur.

HODGES, C.J., and OPALA, and WATT, JJ., concur in part and dissent in part.

OPALA, J., with whom HODGES, C.J., and WATT, J., JOIN, dissenting in part: For full explanation of my views on production and post production costs, see *Wood v. TXO Production Corp.,* Okl., 854 P.2d 880, 883 (1992) (Opala, C.J., Dissenting).

---

2. Our pronouncement in this opinion does not disturb our ruling in *Johnson v. Jernigan,* 475 P.2d 396 (Okla.1970), which held a lessor is

required to bear its proportionate share of transportation costs when the sale occurs off the lease premises.