No. 43,424

Faye Gilmore and Ruth Chapin, *Appellants*, v. The Superior Oil
Company, a Corporation, *Appellee.*

(388 P. 2d 602)

Opinion filed January 25, 1964.

*W. Luke Chapin,* of Medicine Lodge, argued the cause and was on the briefs for the appellants.

*Richard Jones,* of Wichita, argued the cause, and *A. W. Hershberger, Wm. P. Thompson, H. E. Jones, Jerome E. Jones, Robert J. Roth,* and *William R.*

*Smith,* all of Wichita, *Ralph C. Hall,* of Medicine Lodge, and *Robert D. Poulson,* of Denver, Colorado, were with him on the briefs for the appellee.

The opinion of the court was delivered by

ROBB, J.: This is an appeal from the trial court's judgments and orders of October 22, 1962, and November 8, 1962, sustaining defendant's demurrer to plaintiffs' amended petition and granting judgment for defendant.

A petition was filed on June 28, 1962, and on September 7, 1962, the trial court permitted amendments to paragraphs 4, 11, and 13 (c), and on October 22, 1962, permitted plaintiffs to amend paragraphs 5 and 6 and attach thereto exhibits "C" and "D."

Pertinent allegations of the amended petition were that on December 6, 1946, plaintiffs and their husbands made, executed, and delivered oil and gas leases to defendant covering certain described land. Certified copies of the leases were attached and marked exhibits "A" and "B." All royalties from the land were owned by plaintiffs. Within the primary term of the leases, oil and gas were discovered and this action pertains to the royalties on the gas.

Prior to November, 1956, large amounts of gas were vented and wasted by defendant's production of oil from the wells on the land. There was market demand for such gas and complaints had been made by some of the royalty owners to producing companies which resulted in an investigation by the state corporation commission concerning the waste of such gas.

In November, 1956, defendant installed a large compressor station on the leased premises in order to compress thereby all the gas produced from such premises rather than installing small compressors at the mouth of each well and at that time defendant commenced compressing such gas and selling it to Cities Service Gas Company at twelve cents per 1,000 cubic feet. In May, 1957, defendant, for the first time, sent to each of the royalty owners an instrument designated as a division order whereby they were requested to contribute to the cost of compressing the gas estimated at three cents per 1,000 cubic feet. A photostatic copy of the letter and one of the gas division orders were attached to the petition, made a part thereof and marked exhibit "C."

At the time the trial court heard and sustained defendant's general demurrer to plaintiffs' petition as then amended, it entered judgment for defendant and made some comments which, in pertinent

part, were that prior to the installation of the compressor, there was no market for the gas; the gas was being vented and wasted and the state corporation commission was conducting an investigation of such waste; defendant thereafter installed a compressor station whereby the gas was made marketable; under the terms of the lease the lessee was required to pay one-eighth of the proceeds from the sale of gas at the mouth of the well where gas only was found; at the mouth of the well the gas was unmarketable and had no market value; it was only after the gas was taken from the mouth of the well, either immediately into a compressor or at a gathering compressor farther out in the field, that it became marketable; the agreed price was "what it was worth at the mouth of the well" or, as in this case, "what it was worth when made marketable as the defendant did through his compressor system;" other oil companies, including the Barbara Oil Company, may have created a custom and practice of paying compression charges insofar as those companies were concerned, but the trial court did not believe that such custom and practice was binding upon this defendant under the lease; the only issue involved was whether defendant was entitled to deduct three cents per 1,000 cubic feet for taking the gas from the mouth of the well to the compressor and making it marketable.

The trial court further stated it did not know what more could be shown relative to the issue since counsel candidly admitted the amended petition presented the sole issue.

The trial court stated it recognized this case as a very close one but under *Matzen v. Hugoton Production Co.*, 182 Kan. 456, 321 P. 2d 576, 73 A. L. R. 2d 1045, and other authorities cited, the court concluded the weight thereof was to the effect that defendant was entitled to deduct the cost of making the gas marketable and was liable only for the remainder of the proceeds after making the gas marketable. The court stated a second time that the question was a close one but it would be best to decide it as early as possible and that "probably the cheapest way to get a determination of this is to appeal the demurrer to the supreme court and let them decide it." The trial court entered its formal journal entry of judgment on November 8, 1962, sustaining the general demurrer of defendant to plaintiffs' amended petition and entered judgment for defendant for costs. It is from this order sustaining the demurrer, and the judgment for defendant that plaintiffs appeal.

The leases in question were the same as to both plaintiffs and the pertinent provision thereof is:

"The lessee shall pay to lessor for gas produced from any oil well and used by the lessee for the manufacture of gasoline or any other product as royalty ⅛ of the market value of such gas at the mouth of the well; if said gas is sold by the lessee, then as royalty ⅛ of the proceeds of the sale thereof at the mouth of the well. The lessee shall pay lessor as royalty ⅛ of the proceeds from the sale of gas as such at the mouth of the well where gas only is found  .  .  ."

Both parties and the trial court rely on the Matzen case, *supra*, but that case is not applicable here for the very cogent reason the parties there had stipulated in court that the lessee could and had properly deducted costs of a large gathering system to transport the gas from the leased property to a far distant pipeline. We need not extend this opinion by discussing the pros and cons of the Matzen case.

Construction of oil and gas leases containing ambiguities shall be in favor of the lessor and against the lessee. (2 Summers on Oil and Gas, perm. ed., § 372, p. 485; *Stady v. The Texas Company,* 150 Kan. 420, Syl. ¶ 2, 94 P. 2d 322.) It is puzzling to understand why the above textwriter had such difficulty with this rule for the reason that the lessee of an oil and gas lease usually provides the lease form or dictates the terms thereof, and if such lessee is desirous of a more complete coverage of the marketing of oil, gas, liquid hydrocarbons, or even helium gas, which has recently been found to exist in the minerals underlying the vast Hugoton field, the lessee has the opportunity to protect itself by the manner in which it draws the lease. Much more could be said on this point but extension of the discussion would be pure dictum and of no benefit to the bench, the bar, or the oil and gas industry.

The lessee here had the right under the terms of its lease to extract oil and gas from the ground. In extracting the oil it was necessary to extract the gas. If that gas was separated from the oil and sold, lessee had title and possession thereof as personal property, and if it sold the gas, it was required to pay the lessor as royalty ⅛ of the proceeds of the sale thereof *at the mouth of the well.* In *Scott v. Steinberger,* 113 Kan. 67, 213 Pac. 646, it was stated a lessor was entitled to ⅛ of the gas introduced in the pipes without having it diminished by the leakage in transportation through the pipes (p. 70) and it was there held:

".  .  . the lessor was entitled to receive his share as measured into a pipe line which connected with the wells at the price or value of gas at that

place and not the price or value that was obtained for it at some distant place on the pipe line to which it was transported and sold." (Syl.)

In 2 Summers on Oil and Gas, perm. ed., § 415, p. 631, may be found a discussion to the effect that the duty to market oil and gas rests constantly upon the lessee, and if under such circumstances as we have here, it fails to use reasonable diligence in so marketing the oil and gas, the lessee may be in difficulty by reason of being subject to investigation by the state corporation commission. Where such reasonable diligence is not expressed in the lease, it generally is implied.

In *Skaggs v. Heard,* 172 F. Supp. 813, a separator and also a compressor were installed by the lessee. After the expiration of approximately eleven months, the lessee assigned his interest to an assignee who continued to operate in the same manner as the lessee had operated except that the assignee undertook to charge back against the lessor a part of the cost of operating the compressor. The federal district court analyzed the meaning of the words *at the well* and defined them as meaning the same as well *head* or the *mouth* of the well and, as there interpreted, meant *on the lease.* While a careful reading of the language of the Skaggs case shows the factual situation therein was sufficiently different from our case to make it indecisive of our present issue, portions of the general discussion are somewhat helpful. The separator was located on the leased premises 320 feet from the well and the compressor was ten feet beyond the separator. The compressed gas, therefore, was delivered to the purchaser's pipeline from the compressor on the leased premises 330 feet from the well.

The lessee in our case did not consult with the lessor on any details pertaining to the location of the compressing station but on its own responsibility placed it on the Gilmore lease which was a part of the overall lease including the property of both plaintiffs. The only purpose for the compressing station was to put enough force behind the gas to enable it to enter the pipeline *on the lease.* This made the gas marketable and was in satisfaction of the duties of the lessee so to do.

Kansas has always recognized the duty of the lessee under an oil and gas lease not only to find if there is oil and gas but to use reasonable diligence in finding a market for the product, or run the risk of causing the lease to lapse. (*Gas Co. v. Jones,* 75 Kan. 18, 22, 88 Pac. 537; *Howerton v. Gas Co.,* 81 Kan. 553, 106 Pac. 47.)

In 3A Summers on Oil and Gas, perm. ed., § 589, pp. 109-127, and 1962 Cumulative Pocket Part, § 589, pp. 9-12, a comprehensive discourse with citation of supporting authorities may be found on the duty of the lessee under different provisions of various leases including how royalty payments are to be made, how the gas is to be measured by meter, and what price the lessee is to pay for such gas, and further, that where a lease provides for a royalty for gas, which may be paid in a number of ways (p. 113), in the absence of an express provision of the lease creating such duty, the lessee is under an implied obligation to exercise reasonable diligence in marketing the gas produced. If a market value for the gas produced does not actually exist, the basis of the reasonable value thereof may be established by competent evidence. (p. 114.)

The record discloses the gas here involved was put into pipelines already existing on the leases in question and we, therefore, need not consider that the lessee was put to any great expense in building miles of pipelines for that purpose.

Our attention has been called to Merrill on Covenants Implied in Oil and Gas Leases, 2d ed., § 85, p. 214, where the author makes the unqualified statement that,

"If it is the lessee's obligation to market the product, it seems necessarily to follow that his is the task also to prepare it for market, if it is unmerchantable in its natural form. No part of the costs of marketing or of preparation for sale is chargeable to the lessor. This is supported by the general current of authority." (pp. 214, 215.)

In the 1959 Pocket Supplement to the above work, § 85, p. 61, we find the most recent authorities on the subject of the duty to prepare for market and what is necessary in such preparation, and finally, that the lessee is required to bear the expense because such preparation is necessary to make the gas marketable.

Plaintiffs, in an effort to set up an enlargement of the duty of the lessee, call our attention to the two oil and gas division orders sent to them by the lessee. However, we are inclined to agree with the trial court and the defendant that consideration of such division orders is not necessary to a determination of this case, and we shall, therefore, not discuss them.

Other authorities cited and discussed by the parties are recognized but we fail to see how they may be applicable in this case. It is admitted by everyone concerned this is a novel question in our oil and gas industry, and while the law is not a static thing, and especially is this true of the law of oil and gas, we are of the

opinion the trial court erred both in sustaining the demurrer to plaintiffs' amended petition and also in entering judgment for defendant for costs.

The judgment is reversed and the case remanded with directions to overrule the demurrer and the trial court to proceed with the trial in accordance with the views expressed herein.